TANNERS' NAT. BANK OF CATSKILL v. LACS et al.

(Supreme Court, Appellate Division, Third Department.   December 30, 1909.)

1. BILLS AND NOTES (§ 116*)—FORM AND CONTENTS—WRITTEN OR PRINTED.
   The written portions of a note prevail over the printed when it is pre-
   pared on a printed form.
   [Ed. Note.—For other cases, see Bills and Notes, Dec. Dig. § 116.*]

2. BILLS AND NOTES (§ 144*)—NEGOTIABILITY AND TRANSFER—FRAUD.
   Where the words "not transferable" were written plainly in the lower
   left-hand corner of a note, though in smaller writing than the body of the
   note, this rendered it nonnegotiable, and it was not fraud or negligence
   for defendants to indorse and deliver it to another, who promised to hold
   it as security.
   [Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. § 364;  Dec.
   Dig. § 144.*]

   Kellogg and Sewell, JJ., dissenting.

Appeal from Trial Term, Green County.

Action by the Tanners' National Bank of Catskill against Samuel
Lacs and another, impleaded with Samuel Exl.   From a judgment dis-
missing plaintiff's complaint as against Samuel Lacs and another,
plaintiff appeals.   Affirmed.

Argued before SMITH, P. J., and CHESTER, KELLOGG,
COCHRANE, and SEWELL, JJ.

Osborn, Bloodgood & Wilbur (Frank H. Osborn, of counsel), for
appellant.

Jacob Newman, for respondents.

CHESTER, J.   The action is upon a promissory note executed by
the defendant Samuel Lacs and indorsed before delivery to the payee,
Samuel Exl, by Jennie Lacs.   The written part is in the handwriting
of one Goldberg, who was present at its execution.   The note was aft-
erwards transferred by Exl to one Amos Gordon, and by the latter
to the plaintiff, who brought this suit thereon.   The defense is that
the note was a nonnegotiable one, and therefore improperly trans-
ferred to the plaintiff.   The note was indorsed by Jennie Lacs and
delivered to Exl as collateral security for the payment of a note of
like amount, bearing the same date, and executed by Samuel Exl for
the accommodation of Samuel Lacs.   At the time of the delivery of
the note in suit to Exl, he agreed with the defendants Samuel and
Jennie Lacs that he would not negotiate the instrument, but would
hold it as collateral security for the payment of the note made for the
accommodation of Lacs.   Such note made by Exl for the accom-
modation of Lacs was fully paid at maturity.   In violation of the
agreement to so hold the note, it was improperly transferred to Gordon
and afterwards to the plaintiff.   The note was written on the usual
blank form of a promissory note, and it was made to the order of
Samuel Exl; the words "order of" being in the printed form.   In
the lower left-hand corner of the note, under the words "Value re-
ceived" in the printed form, was the abbreviation "No.," followed by

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

a blank space an inch long, and then on the same line, following the blank space, the word "Due," with a blank space following that. The letter "t" was added to the abbreviation "No." and the word "transferable" was written in the remainder of the short blank space. This word was in the same handwriting as the body of the note, but was in a somewhat smaller and contracted hand to accommodate the long word "transferable" to the limited space in which it was written. The testimony shows that Gordon, the indorsee, was unable to read written English, and that before taking this note he consulted a friend, one Michael Lackey, who had been a banker accustomed to handling commercial paper, who advised him it was good commercial paper. Lackey testified that, while he observed there was some writing in the lower left-hand corner, he did not notice that the words "not transferable" were thereon. The cashier of the plaintiff testified that he examined the note when it was brought to him, and that he did not notice these words.

In Benedict v. Cowden, 49 N. Y. 396, 10 Am. Rep. 382, it was held that a memorandum upon a note made and delivered contemporaneously with it and intended by the parties as a part of the contract and to give effect to their actual agreement is a part of the note and qualifies it the same as if inserted in the body of the instrument. The appellant seems to concede that whatever is written on the note with the knowledge of a party to it is unquestionably binding upon him. It is also a rule of law that the written portion of an instrument must prevail over the printed when the instrument is prepared on a printed form. But the claim here is that the words "not transferable" were so obscurely written as to be calculated to deceive an innocent purchaser, and that the maker was not free from negligence in signing a note such as this was.

There is no substantial dispute on this appeal as to the law of the case, but a question of fact was presented as to whether the maker was guilty of negligence in not having these words "not transferable" more plainly written upon the note. That question of fact has been determined adversely to the appellant by the findings of the court, where it is found that the defendants Samuel and Jennie Lacs were guilty of no fraud or negligence in making, indorsing, or delivering the said note to Exl. I am inclined to believe that there is sufficient evidence to support this finding of absence of negligence. While the note as written might deceive some men, it would not others. The cashier of the plaintiff testified that he examined the note in the ordinary course of business, but it appeared that he examined it hastily, and did not give upwards of half a minute to such examination—just long enough to read it through. The witness Lackey, while he noticed some writing at the bottom of the note, did not give it sufficient care to determine what it was. When the attention of the cashier was called to the matter in court, he testified that he could see that the words "not transferable" were plain to him then. The taking of this note by the bank with these words written upon it comes much nearer being carelessness on the part of its cashier than it was for the maker to not see that these words were more plainly written, or written in

larger letters. I think therefore we would hardly be justified in reversing the court's finding on this question of fact. If I am right in this respect, the finding is controlling and should result in the affirmance of the judgment.

The judgment should be affirmed, with costs. All concur, except KELLOGG, J., dissenting in opinion in which SEWELL, J., concurs.

JOHN M. KELLOGG, J. (dissenting). The defendants chose to put their obligation in the form of a negotiable promissory note, and apparently assumed the liability arising from that form of obligation. The note was written by filling in a blank form. In the lower left-hand corner, opposite and a little below the line of the signature, are the words "No." and "Due," with a blank space about an inch between. This blank was intended for the convenience of the payee, where he might indicate the number which the note bears in the series of notes held by him and the particular date upon which it fell due. It was intended, and is used, for that purpose only; the note being complete without it. The defendants requested Exl to exchange notes with them, as they desired to borrow money at their bank and could not get it upon their own notes but could have Exl's note discounted as business paper. Defendants' note was to be held by Exl as security that the note given to the defendants would be paid. Defendants said their note was not to be discounted, and Exl said he did not care about that; he would hold it. The defendants' attorney also said to Exl:

"You are no good, and if Lacs sues on your note he would never realize on his judgment; whereas, his note is perfectly good."

The defendants' attorney then wrote the note and the memorandum in the left-hand corner and delivered it to Exl. It does not appear that Exl's attention was called to the words in the left-hand corner, or that he knew that the note received had any such memorandum upon it. The memorandum was made by putting a character after the word "No.," which might be considered a "t" or a capital "A," and crowding into the space after it and before the word "Due" what might be read, if standing alone, as "fanferxalle." The writing is cramped and does not appear to be the same, or in the same hand, as the body of the note. The letters written in between the words "No." and "Due" were, no doubt, meant to make the sentence read, "Not transferable Due." It might be read, "No. A fanferxalle Due." We may assume that the words intended to read "Not Transferable Due." Whether the memorandum took the form it did through the carelessness of the attorney, or whether it was done to escape the observation of Exl, or why it was put in such ambiguous form, does not appear. It certainly deceived the plaintiff. Gordon, who acquired the note from Exl and transferred it to the plaintiff, could not read English; but before he purchased the note he submitted it to a business man, a friend of his, to ascertain whether it was good paper. The friend took the note, and, after inquiry as to the responsibility of the parties, returned it with the statement that it was good commercial paper, and Gordon acquired it without any knowledge or suspicion of the existence of the memorandum in the corner. None of the parties discovered the

memorandum at all, and from the photograph in evidence it is fair to assume that the note could be negotiated at almost any bank without conveying notice that it is not transferable.

When the defendants elected to issue their note in negotiable form and then put upon the paper, in an unusual, unexpected place, a notice that it was not transferable, they took the chance whether what they intended as a notice would actually give notice. The position, the words, and the character of the notice are theirs. If the plaintiff saw the words, or they were so written that in the ordinary course of business it should have seen them, it may well be denied the position of a holder in due course. If the notice in the corner of the note was so obscurely and blindly given that it would not be seen by an ordinary purchaser, and was not seen by the plaintiff, we may well say that it was a purchaser in due course. It was easy to restrict the negotiation of this note by a proper memorandum, or to make the form of the note nonnegotiable. When the defendants issued their negotiable promissory note, they could only restrict or prevent its transfer by notice that the note was not what it seemed. The question is: Did they give such notice to the plaintiff? If they did, the plaintiff cannot recover; if they did not give such notice, but only attempted, in a careless unbusinesslike manner, to give it, and brought no knowledge or information to the plaintiff upon the subject, they, and not the plaintiff, should suffer.

The question in the case, therefore, is whether the memorandum was such that it conveyed to the indorsees of the note notice of its actual character, or whether the memorandum was of such a character that the plaintiff's failure to receive the notice was such an act of gross carelessness as ought to prevent its recovery.

The judgment should be reversed upon the law and the facts, and a new trial granted, with costs to the appellant to abide the event.